November 28, 2017

**Re:** Job Interview Discrimination

On Tuesday, November 28, 2017, at 3:00 P.M., I, Karen M. Jones, had a job interview with the City of St. Martinville held at St. Martinville City Hall located at 120 New Market Street in St. Martinville, Louisiana. The interview was for the vacant position of Chief of Police and held in Executive Session during a special city council meeting. Myself and three other applicants were interviewed in the following order:

    (1.) Terrance Moore, black/male
    (2.) Donald Johnson, white/male
    (3.) Karen Jones, black/female
    (4.) Richard Martin, white/male

All applicants were interviewed in a closed-door session inside of the mayor's office. Present during the interviews and seated in the following order were:

    (1.) Thomas Nelson, Mayor
    (2.) Debra Landry, Councilwoman
    (3.) Allen Durand, General Attorney for the City of St. Martinville
    (4.) Mike Fuselier, Councilman
    (5.) Chester Cedars, Civil Service Attorney for the City of St. Martinville
    (6.) Craig Prosper, Councilman
    (7.) Dennis Williams, Councilman
    (8.) Edmond Joseph, Councilman

While I waited for my turn to be interviewed, I recalled myself feeling extremely ecstatic concerning the upcoming interview. I felt that I was well prepared to answer questions regarding my current and past work history, my experience in crime scenes, as well as, my plan to curtail crime and reduce the police departments spending habits. However, once I got inside, I received a hostile vibe from Councilman Mike Fuselier.

Going into the interview, I knew I would be the only female; however, I was under the impression that all four applicants would be asked the same interview question; regardless of sex. The questions asked by Mike Fuselier left a negative impact on me. They were not job-related questions necessary to the day-to-day operations of the job I applied for. The questions were perceived to make me feel as I would be less productive then my male counterparts; especially when they came from a councilmember who is also Mayor Pro-temp and huge influencer on the other council members. As stated earlier, I expected questions about my qualifications for the job, not about my personal life.

Mike Fuselier's interview questions directed towards me did not strike me as one being ignorant of the law. Especially, when there were two attorneys present during the interview process and no one interjected to his sexist questions. His interview questions asked made it appear to the group of councilmembers that he feared I was emotional and my emotional state would be disruptive to the police officers and I could not handle being a supervisor because I am a woman. I left the interview feeling Mike had a great disdain feeling towards a woman in a supervisory position and felt he voiced it very clearly, due to the questions he asked.

Immediately after I left city hall, I went straight home and typed the following questions that were asked during the job interview:

(1.)  Allen Durand opened up the interview by stating he asked the previous two applicants to inform the panel about their current job duties.
(2.)  Debra Landry asked if I knew the types of crime that goes on in St. Martinville.
(3.)  Debra Landry asked if I felt it was important for the police to engage in the community.
(4.)  Craig Prosper asked about longevity and if I planned on being there for the long haul.
(5.)  Craig Prosper asked if I agreed with the police officers congregating at Popeye's on a daily basis to eat there, due to free meal perks.
(6.)  Dennis Williams asked how I felt about community policing.
(7.)  Craig Prosper asked if I thought the city police should have a good working relationship with the sheriff's office.
(8.)  Mike Fuselier stated/asked, "Being that I am in the education field, I know most men do not like being supervised by a woman. How do you think the male police officers at the police department would feel being supervised by a woman?"

(9.) Mike Fuselier stated/asked, "I know women are emotional at times, how do you control your emotions?"

(10.) Mike Fuselier asked if I had ever been written up.

I believe I was discriminated against during the interview process on the basis of my gender. The questions by Mike Fuselier were demeaning and I felt he was provoking me to get excited. They were not well-rounded questions and targeted directly toward me, based on my gender. I deemed the questions as discriminatory and used during the determination process and completely unfair.

Respectfully,

*Karen M. Jones*
Karen M. Jones

P.O. Box 44
St. Martinville, LA 70582
kmj.hebrew.isralite@gmail.com
(337) 316-0688

December 20, 2017

## ADDENDUM TO ORIGINAL STATEMENT

On Tuesday, November 28, 2017, I drafted a written statement detailing how humiliated I felt during a job interview, due to the discriminatory, gender-based questions asked of me by Councilman/ Mayor Pro-temp Mike Fuselier. I know I did not get the job that I am qualified for because certain questions were asked during the interview process that were solely targeted on my gender and used to influence the direction of the interview. If I was asked questions merely on my qualifications and goals to better the organization, the outcome would have been vastly different. The questions Councilman/ Mayor Pro-temp asked during the interview process regarding women being emotional and women supervising men were used against me.

I want to note an article in the *Teche News* (December 13, 2017, p. A-8) "Fuselier said he has used a matrix of five qualifications to weigh the applicants: the score on the Civil Service written exam, essays written as part of the application, experience, references and impressions from the interview." The "impressions from the interview" meant those questions asked that were based on my gender. In addition to the discriminatory questions, Councilman/ Mayor Pro-temp asked me during the job interview, "Have I ever been written up?" I am not aware if the other three applicants were asked that question, but I believe that is something that should have been done during a background check; not in a way to discredit me. As stated in my original statement, I considered the questions as discriminatory and used during the determination process and completely unfair.

Respectfully,

*Karen M. Jones*
Karen M. Jones
P.O. Box 44
St. Martinville, LA 70582
kmj.hebrew.israelite@gmail.com
(337) 316-0688

1

*Karen M. Jones*

# LAW OFFICE OF ATTORNEY NATALIE BLACKMAN

412 N. 4th St. Suite 102 Rm 124 • BATON ROUGE, LA • 70802

(318) 639-4529 • JUSTICE@ATTORNEYNATALIEBLACKMAN.COM • WWW.ATTORNEYNATALIEBLACKMAN.COM

Mayor Melinda Mitchell
P.O. Box 379
St. Martinville, LA 70582

    Re:    Karen Mouton

Dear Mayor Mitchell,

Please be advised that this Office has been retained to represent Karen Mouton in the above referenced matter. This letter serves as a statement of position on her behalf.

### Statement of Facts

On Tuesday, November 28, 2017, Karen Mouton had a 3:00 pm interview with St. Martinville City for the vacant position of Chief of Police. The following people also interviewed for that position on the same day as Ms. Mouton: (1) Terrance Moore, an African-American male; (2) Donald Johnson, a white male; and (3) Richard Martin, a white male. As such, Ms. Mouton was the only woman interviewee for the position. The interview was conducted by the following people: (1) Mayor Thomas Nelson, (2) Councilwoman Debra Landry, (3) Allen Durand, General Attorney for the City of St. Martinville; (4) Councilman Edmond Joseph; (5) Chester Cedars, Civil Service Attorney for the City of St. Martinville; (6) Councilman Craig Prosper; (7) Councilman Dennis Williams; and (8) Councilman and Mayor Pro-temp Mike Fuselier.

During the interview Ms. Mouton was subjected two sexist and demeaning questions based on her gender. The questions were directed specifically towards her from Councilman Fuselier and were clearly centered around the fact that she is a woman. The questions consist of the following:

1. "Being that you are in the education field, I know most men do not like being supervised by a woman. How do you think the male police officers at the police department would feel being supervised by a woman?"

# LAW OFFICE OF ATTORNEY NATALIE BLACKMAN

412 N. 4th St. Suite 102 Rm 124 • BATON ROUGE, LA • 70802

(318) 639-4529 • JUSTICE@ATTORNEYNATALIEBLACKMAN.COM • WWW.ATTORNEYNATALIEBLACKMAN.COM

2. "I know women are emotional at time. How do you control your emotions?"

These questions were not relevant to the day-to-day operations of the Chief of Police, were not asked to the other male applicants, assumes Ms. Mouton would be less capable than the other male applicants, and of further insult, insinuates that as a woman, Ms. Mouton would not be able to control her own emotions

Title VII, specifically *42 U.S.C. Section 2000e-3*, makes it unlawful for an employer to discriminate against any individual because of such individual's gender, including during the interview process. Here, the discriminatory nature in which Ms. Mouton's interview was conducted is exactly what Title VII seeks to prevent. Not only did Councilman Fuselier subject Ms. Mouton to sexist, demeaning interview questions, his actions were conducted in front of the entire interview panel, of which he has great influence. Furthermore, we contend that Ms. Mouton was not selected for the position because she is a woman as she was far more qualified than the applicant chosen.

Accordingly, a Charge of Discrimination has been filed with the EEOC, and if this matter is not settled at the EEOC level, this Office intends to move forward with this matter to the fullest extent of the law, including a federal suit in the Western District of Louisiana. Of course, we welcome the opportunity to discuss this matter further. I may be reached at the contact information below.

Sincerely,

Natalie Blackman #35662
412 N. 4th St. Suite 102
Baton Rouge, LA 70802
Phone: (318) 639-4529
Fax: (888) 463-4952

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# FAX COVER SHEET

| | |
|---|---|
| TO | |
| COMPANY | |
| FAX NUMBER | 15045952884 |
| FROM | NatalieBlackman |
| DATE | 2018-10-29 20:27:57 GMT |
| RE | 461-2018-00904 |

COVER MESSAGE

Shantecia Johnson
The Law Office of Natalie Blackman
www.attorneynatalieblackman.com
412 N. 4th St., Suite 102, Room 124
Baton Rouge, LA 70802
Phone: (318) 639-4529
Fax: (888) 463-4952

# LAW OFFICE OF ATTORNEY NATALIE BLACKMAN

**8550 United Plaza Blvd. Suite 702 • BATON ROUGE, LA • 70809**

(318) 639-4529 • JUSTICE@ATTORNEYNATALIEBLACKMAN.COM • WWW.ATTORNEYNATALIEBLACKMAN.COM

October 29, 2018

*Via Fax*: 15045952884

To whom it may concern:

On behalf of Karen Mouton, Charge #461-2018-00904, this office requests a Right to Sue. More than 180 days has passed since the Charge was filed.

In addition, this office requests the Position Statement of the Respondent and all exhibits and attachments of the Position Statement as permitted under FOIA and/or Section 83. Please inform if anything else is needed. Thanks for your time.

Respectfully,

Natalie Blackman #35662
8550 United Plaza Blvd. Suite 702
Baton Rouge, LA 70809
Phone: (318) 639-4529
Fax: (888) 463-4952



**U.S. Equal Employment Opportunity Commission**
**New Orleans Field Office**

Hale Boggs Federal Building
500 Poydras Street, Room 809
New Orleans, LA 70130
(504) 595-2826
TTY (504) 595-2958
FAX (504) 595-2884
1-800-669-4000

Respondent: CITY OF ST. MARTINVILLE
EEOC No: 461-2018-00904

Karen Jones
PO BOX 44
St. Martinville, LA 70582

Dear Mrs. Jones:

The Equal Employment Opportunity Commission has received your request for a Notice of Right to Sue in the above referenced charge.

Your request has been forwarded to the U.S. Department of Justice (DOJ) for action. That Agency will act on your request and issue the Notice directly to you.

If you have any questions, please call this office at (504) 595-2826.

On behalf of the Commission:

NOV - 1 2018
Date

Keith T. Hill
Director

cc:   Natalie Blackman
      LAW OFFICE OF ATTORNEY NATALIE BLACKMAN
      8550 United Plaza Blvd., Suite 702
      Baton Rouge, LA 70809



**U.S. Equal Employment Opportunity Commission**
**New Orleans Field Office**

Hale Boggs Federal Building
500 Poydras Street, Room 809
New Orleans, LA 70130
(504) 595-2826
TDD 1-800-669-6820
Fax: (504) 595-2884
1-800-669-4000

Respondent: CITY OF ST. MARTINVILLE
EEOC Charge No: 461-2018-00904
FEPA Charge No:

January 25, 2018

Karen M. Jones
P.O Box 44
Saint Martinville, LA 70582

Dear Ms Jones:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

| [X] | Title VII of the Civil Rights Act of 1964 (Title VII) |
| [ ] | The Age Discrimination in Employment Act (ADEA) |
| [ ] | The Americans with Disabilities Act (ADA) |
| [ ] | The Equal Pay Act (EPA) |
| [ ] | The Genetic Information Nondiscrimination Act (GINA) |

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

Please be aware that we will send a copy of the charge to Louisiana Commission On Human Rights P.O. Box 94094 Baton Rouge, LA 70804 as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

The quickest and most convenient way to obtain the contact information and the status of your charge is to use EEOC's Online Charge Status System, which is available 24/7. You can access the system via this link (https://publicportal.eeoc.gov/portal) or by selecting the "My Charge Status" button on EEOC's Homepage (www.eeoc.gov). To sign in, enter your EEOC charge number, your zip code and the security response. An informational brochure is enclosed that provides more information about this system and its features.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

*Elaine Jordan*

Elaine Jordan
Investigator Support Asst
(504) 595-2830

Office Hours: Monday – Friday, 8.00 a.m. – 4:30 p.m.
www.eeoc.gov

Enclosure(s):    cc:  Natalie Blackman, Attorney
                     LAW OFFICE OF ATTORNEY NATALIE BLACKMAN
                     412 North 4th Street, Suite 102 Rm 124
                     Baton Rouge, LA 70802



**U.S. Equal Employment Opportunity Commission**
**New Orleans Field Office**

Hale Boggs Federal Building
500 Poydras Street, Room 809
New Orleans, LA 70130
(504) 595-2826
TTY (504) 595-2958
Fax: (504) 595-2884

Respondent: CITY OF ST. MARTINVILLE
EEOC Charge No.: 461-2018-00904
FEPA Charge No.:

March 29, 2018

Karen M. Jones
P.O. Box 44
Saint Martinville, LA 70582

Dear Ms. Jones:

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

- [X] Title VII of the Civil Rights Act of 1964 (Title VII)

- [ ] The Age Discrimination in Employment Act (ADEA)

- [ ] The Americans with Disabilities Act (ADA)

- [ ] The Equal Pay Act (EPA)

- [ ] The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

(1) Review the enclosed charge form and make corrections.

(2) Sign and date the charge in the bottom left hand block where I have made an "X". For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filing date.

(3) Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court. Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to Louisiana Commission On Human Rights P.O. Box 94094 Baton Rouge, LA 70804 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process. If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

Shwann D. Brignac
Investigator
(504) 595-2881

Office Hours: Monday – Friday, 8:00 a.m. - 4:30 p.m.
www.eeoc.gov

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination
    Copy of EEOC Uniform Brochure, "What You Should Know Before You File A Charge With EEOC."

cc: Natalie Blackman
    LAW OFFICE OF ATTORNEY NATALIE BLACKMAN
    412 North 4th Street, Suite 102 Rm 124
    Baton Rouge, LA 70802

EEOC Form 5 (11/09)

| | |
|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:    Agency(ies) Charge No(s):<br>☐ FEPA<br>☒ EEOC    461-2018-00904 |

**Louisiana Commission On Human Rights** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Karen M. Jones | ~~(318)~~ 316-0688 (337) | |

Street Address: P.O. Box 44, Saint Martinville, LA 70582

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CITY OF ST. MARTINVILLE | 15 - 100 | (337) 394-2230 |

Street Address: 120 S. New Market Street, P. O. Box 379, Saint Martinville, LA 70582

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE    ☐ COLOR    ☒ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN
☐ RETALIATION    ☐ AGE    ☐ DISABILITY    ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 11-28-2017    Latest: 11-28-2017
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I applied for the position of Chief of Police on August 2, 2017. I was interviewed for the position on November 28, 2017, during a special city council meeting in executive session. During the interview process I was subjected to gender biased questions by Mike Fuselier, Councilman. The questions asked by Councilman Fuselier were not specifically related to the position that I was being considered for because the questions were about my personal life. No questions were asked by Councilman Fusilier about my qualifications and goals. I was not selected for the position.

I was the only female candidate for consideration in the interview process. Richard Martin (white male) was selected for the position.

I believe that I was discriminated against due to my sex(female) and race(black) in that I was subjected to gender biased questions during the interview process which led to my non-selection in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

x 4/13/2018    x *Karen M. Jones*
Date          Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

## THIS WEEK

| Henderson drawdown B-1 | Football: Scrimmages, Jam Page A-6 | New Farm Bureau Queen Page B-2 | Young hunter honored Page A-6 | SM soccer registration Page A-6 |

# Teche News

*Justice To All*
Vol. 133, No. 20

*Dedicated To The Progress Of St. Martin Parish*

Established 1886
3 Sections, 18 Pages - $1.00

Wednesday, August 22, 2018



**STANDING ROOM ONLY** — St. Martinville residents and others filled the council meeting room during this past Monday's regular biweekly session. *(Henri C. Bienvenu)*

## Agenda issue sparks heated discussion

### Electric power contract concerns

**Karl D. Jeter**
karl.jeter@techetoday.com

St. Martinville – The unilateral decision by Mayor Melinda Mitchell to remove an item from the Aug. 20 St. Martinville City Council meeting agenda brought a tense exchange between the mayor and council members.

Dist. 2 representative Craig Prosper was upset that the mayor removed an agenda item concerning a delay in advertising for bids from wholesale electricity providers. Mitchell had sought a delay in publishing the first of three required advertisements for bids to better familiarize herself with the contract options.

The delay, Prosper, Dist. 1 representative Mike Fuselier, and others feared, could limit the number of bidders and bring the contracting process and rampup of a new supplier past the Jan. 1 expiration of the existing contract. "Our opportunity to get the best price is dwindling quickly," Prosper warned.

Prosper said he had tried to contact the mayor several times before the meeting, but got no response. The agenda item's removal and lack of contact was the source of the conflict. Mitchell said the calls came when she was at a Louisiana Municipal Association meeting and were transferred to another line.

### SM residents will save on garbage fees

**Karl D. Jeter**
karl.jeter@techetoday.com

St. Martinville – A new contract between the city of St. Martinville and Republic Services will save local residents and businesses almost $50 per year on their monthly garbage collection fee.

The current monthly fee for residential and most commercial garbage pickup is $21.75. Effective Sept. 1 that
**(See GARBAGE, Pg. A-8)**

Prosper and Fuselier stridently questioned the right of the mayor to remove a member's agenda item. Mitchell contends that she has full control of meeting agendas and may add or delete items on her own authority. But the council opted to seek an attorney general's opinion on the issue, and voted to add the item back to the agenda.

Consulting engineer Jim Poché said three bidders have express interest in submitting proposals to provide electric power to the city under the "Request for Proposals" (RFP) process which allows a period of negotiation following the submission of proposals.

A pre-proposal conference will be held on Sept. 5, at Poché Prouet's Lafayette office. Sealed bids will be opened by the mayor and Poché at city hall at 2 p.m. on Sept. 10 and awarded during the council meeting at 6 p.m. which was rescheduled from Sept. 3 due to the Labor Day holiday.



**BRADSHAW**

## Time to celebrate south Louisiana

**Jim Bradshaw**
jimbradshaw4321@gmail.com

Harvest season is a busy time for south Louisiana farmers and ranchers, but it is also a busy time for folks who like to eat, dance, and generally pass a good time. That's because it is also the time for harvest festivals, when we take the opportunity to have some fun when the work is done.

Most of the festivals, especially the older ones, began as local celebrations and retain their local flavor. But most of them also play a significant role in bringing visitors who, for some reason unfathomable to me, grow fascinated just watching us be who we are.

Looking at the calendar of the Louisiana Fairs and Festival Association, it becomes obvious that we throw annual parties to celebrate practically everything we eat, do, or listen to. But the first festivals were based on something we raised on the farm or pulled

## Recall effort targets St. M'ville councilman

**Karl D. Jeter**
karl.jeter@techetoday.com

St. Martinville – The St. Martin Parish Clerk of Court and Registrar of Voters have received notice from the Louisiana Secretary of State's Office that a recall has been filed against St. Martinville Dist. 3 councilman Dennis Paul Williams.

Williams, who was elected to his fourth term on the council this past April, is facing opposition that, at least in part, seems to stem from his support of current Police Chief Ricky Martin, who was hired last December in a 3-2 council decision over minority candidate Karen Jones. The recall application, signed by Daja Alexander, alleges a "lack of representation" by Williams for Dist. 3 residents.

Williams defeated Mourice Smith by a vote of 241 to 206 in the April 28 municipal election with a 50 percent turnout of the 867 eligible voters in the district.

The Secretary of State's approval is not an endorsement of the merits of the recall. It is granted anytime the proper procedures for the application are met. A petition for recall can be filed against any public official, other than judges, anytime except within six months of the end of his or her term of office.

For districts with less than 1,000 registered voters, a recall petition must secure the signatures of at least 40 percent of the qualified electors.

In District 3 that would be 347 voters. That total would have to be secured by Oct. 15.

Once the signatures are verified, an election would be scheduled on the recall question. If the recall passes, the office would be vacated following a nine-day contesting period. An election must then be held to choose a new councilman and the recalled official may not run in that election.

Under state law, if the recall fails, another recall may not be initiated within 18 months.

## Parks moving on new village hall

### $920,000 contract awarded

**Karl D. Jeter**
karl.jeter@techetoday.com

Parks – The Village of Parks will soon get the new village hall building officials have worked to-

total to $920,000. A municipal bond was secured earlier this year to finance the construction.

The building will be located on a vacant

## Status of BB projects

**Karl D. Jeter**
karl.jeter@techetoday.com

Breaux Bridge – Pending Public Works projects here are gradually nearing the end of the often-lengthy process of permitting, engineering and preparation to proceed to actual construction.

At the Aug. 14 city council meeting, Mayor Ricky Calais said the roundabout project at the intersection of Doyle Melancon Road and LA 347/Grand Point Hwy has entered the construction phase. Several months of work were required to complete a needed re-

routing of utility lines before construction could begin. With construction now in progress, the roundabout is tentatively expected to open to traffic around June 2019.

Also:
• State permits for the widening of Dorset Street have been received and bids for the work will opened later this month.
• The extension of water service to areas along LA 94/Mills Ave. to the city limits is underway and should be complete around the end of 2018.
• Problems obtaining

servitudes for a water line extension south along LA 347/Poydras Street and Doyle Melancon Road have limited the scope of that project. Areas of Hollier Road and Kelli Drive will proceed, but extensions on Poydras and Doyle Melancon await required servitude agreements.
• Water extensions to commercial developments north of I-10 are complete and final inspection is expected this week.

Also, the council discussed whether city utility services should be made available to
**(See PROJECTS, Pg. A-8)**



# St. M'ville councilman

**Karl D. Jeter**
karl.jeter@techetoday.com

**St. Martinville** – The St. Martin Parish Clerk of Court and Registrar of Voters have received notice from the Louisiana Secretary of State's Office that a recall has been filed against St. Martinville Dist. 3 councilman Dennis Paul Williams.

Williams, who was elected to his fourth term on the council this past April, is facing opposition that, at least in part, seems to stem from his support of current Police Chief Ricky Martin, who was hired last December in a 3-2 council decision over minority candidate Karen Jones. The recall application, signed by Daja Alexander, alleges a "lack of representation" by Williams for Dist. 3 residents.

Williams defeated Mourice Smith by a vote of 241 to 206 in the April 28 municipal election with a 50 percent turnout of the 867 eligible voters in the district.

The Secretary of State's approval is not an endorsement of the merits of the recall. It is granted anytime the proper procedures for the application are met. A petition for recall can be filed against any public official, other than judges, anytime except within six months of the end of his or her term of office.

For districts with less than 1,000 registered voters, a recall petition must secure the signatures of at least 40 percent of the qualified electors.

In District 3 that would be 347 voters. That total would have to be secured by Oct. 15.

Once the signatures are verified, an election would be scheduled on the recall question. If the recall passes, the office would be vacated following a nine-day contesting period. An election must then be held to choose a new councilman and the recalled official may not run in that election.

Under state law, If the recall fails, another recall may not be initiated within 18 months.

promise for our area.

## RECALL PETITION . . .

You have to wonder about the motives behind the recall petition being circulated against St. Martinville councilman Dennis Paul Williams.

Williams won his fourth term in office just four months ago despite spirited efforts to unseat him.

It seems clear that there is a group of black voters (who are likely not all from his district) who are angry that Williams did not support the hiring of a black police chief and the appointment of a black legal adviser for the town, regardless of the qualifications of the current chief and town attorney.

Some observers might wonder if there's a bit of racism in the air.

## THIS & THAT . . .

RIP -- Last week Bienvenu rela-

## Continued from Page 1

### Bradshaw

"was an emergency deal," the judge told me. "The doctors said, 'We don't think the baby can make it.' But a neighbor, Ida Naomi (mother of the late jeweler Paul Naomi) thought differently. According to the judge's account, 'She said, "No, the baby is fine. Get me a shoebox. Get me a blanket. Heat some bricks in the wood stove." They did, and she made an incubator for me and I survived."

He was the fifth child of Kaliste Saloom Sr. (for whom the Lafayette road is named) and Asma Boustany Saloom, Lebanese emigres who came to Louisiana about 1890. He attended Mount Carmel grammar school, was valedictorian of the Cathedral High class of 1935 and quarterback of its regional champion football team ("I was small, but I was fast"), was sports editor of the newspaper at SLI (UL today), and won a scholarship to the Tulane law school.

He got his law degree in 1942, just after the United States was pulled into World War II, and immediately signed up, although he technically could have been deferred. ("You had to be 5-foot-7 and weigh 130 pounds. I was 5-feet-6 and weighed only 120.")

He said he didn't know what it meant when he was assigned to counterintelligence work. He thought he was going to be a spy, but was told, "No, you're going to do the opposite. You're going to catch spies." He was first sent to North Africa, "to watch the Nazi sympathizers infiltrating from Spanish Morocco and Tangiers."

As a French speaker, he became particularly valuable after the Allied invasion of France. He was sent first to Marseilles, "where I ran across Cajun troops from Lafayette ... and ate my first gumbo in almost two years." He served under Gen. George Patton in Europe and at the end of the war helped capture a notorious German general.

He returned to Lafayette and opened a law firm at the end of the war, involved himself in community life, and was elected city judge in 1953. "I didn't want to run for judge," he said. A good friend was also considering the race. But the friend decided not to run and talked Saloom into seeking the judgeship he held until August 1993.

His life and commitments broadened even more after he married Yvonne Adelle Nassar in 1958 and they began rearing a family that eventually included four children: Kaliste Joseph III, Douglas, Leanne Isabelle and Gregory, all of whom followed his footsteps and earned law degrees.

When his death became known and people who knew him began to reflect on Judge Saloom's life, certain words kept coming to the fore: "Stern but compassionate," "kind and genuine," "brilliant," "willing to share," "icon." The two that came first to me were "visionary" and "gracious."

Even as a young man, he was able to look beyond the immediate, apparent effects of a plan or project or public work, understand its history, and see its wider implications. That's why his counsel was so valuable. And despite a list of accomplishments and honors that might have turned another man's head, he was one of the most gentlemanly and gracious men I've known. That's why he was so widely admired and loved.

*A collection of Jim Bradshaw's columns, "Cajuns and Other Characters," is now available from Pelican Publishing. You can contact him at jimbradshaw4321@gmail.com or P.O. Box 1121, Washington, LA 70589.*



THE STALKS OF SUGARCANE were covered with snow early Friday morning. The last time it snowed in the parish was 2008 (See additional snow pictures on B-2) *(Sally Angelle)*

### Chief

out of elections in favor of appointment if they choose. Both methods are used by other municipalities in the parish.

Much of the audience, including Jones, left the chamber when the vote did not go the way they wanted. Many voiced frustration about the process, suggesting racial bias or "returning favors" played a part. Some hurled insults at Dist. 3 member Williams for failing to support the black candidate.

Williams stood and said the choice was not one of black versus white. He said that, looking at the bigger picture, the qualifications of the prospective applicant had to be weighed without regard to race. For him, he said, Martin was best suited for the job.

Fuselier said he had used a matrix of five qualifications to weigh the applicants: the score on the Civil Service written exam, essays written as part of the application, experience, references and impressions from the interview. He said that, with that objective view, he had come to the conclusion that Martin was the best choice.

Council members thanked the applicants and said the choice was not easy because all the candidates were good, but only one could be selected.

Martin has 20 years of experience in law enforcement. He grew up and was homeschooled in St. Martinville. He was trained by the St. Martin Sheriff's Office in 1994-95 before joining the Broussard Police Dept. After layoffs there, he worked as a quality control and safety officer in the Army Corps of Engineers. He then joined the Iberia Parish Sheriff's Office before coming home to the St. Martinville Police Dept.

"The citizens of St. Martinville should hold us accountable," Martin said. "We have to bridge the divide that has opened up here. The police department needs the community's help and we intend to earn the respect and support of all its residents."

## Some last minute holiday gift ideas

*(StatePoint)* Holiday shopping can be a source of stress for anyone, but particularly for procrastinators. Need some last-minute gift ideas? Think about readily accessible, yet thoughtful items that don't require a lengthy shipping process.

Let these five ideas help solve your eleventh-hour gift-giving woes.

1. DIY-It. DIY gifts can be heartfelt, and many items can be made in a pinch. Bake a tray of Christmas cookies and tie them up with a bow; make seasonally scented homemade candles; or knit a scarf. The possibilities for crafty folks are endless.

2. Get Accessorized. Don't get stumped. Consider a classic fashion accessory, such as a Casio Vintage Watch, which can be found in many national retailers, in a range of affordable prices. Functional and fashionable, these water-resistant timepieces that feature both an alarm and stopwatch will complement an array of style preferences.

3. Head to the Box Office. Quickly check the schedule of your gift recipient's favorite band, team or theater company for tickets to an experience, such as a musical, concert or game. This thoughtful gift can be purchased and received in an instant, thanks to e-ticketing.

4. Pamper Them. The holidays are stressful. Help your loved ones unwind during a busy time of year. Consider a gift certificate for a spa or beauty treatment somewhere local to your recipient. The gift can be enjoyed exactly when it's needed most.

5. Let Them Pick. When you're really in a pinch and you've waited until the last minute, don't stress. A gift card can be a great way to show you thought of someone, without having to spend too much time or energy in search of the perfect item.



GRAND ANSE residents are concerned that extra traffic from the closure of the Bayou Amy bridge will futher damage the bridge on Potato Shed Road. *(Sally Angelle)*

### Closed

provide the necessary support for the bridge loads.

"The work is estimated to take approximately six weeks depending on problems crews may encounter and how many sections or total length of each pile is required. Pile driving is anticipated to start on Friday. Patching of the holes in the deck will be completed after the piles have been driven."

Grand Anse residents are concerned that the bridge located on Potato Shed Road near Bayouland will not be able to withstand the added traffic from the closure of the LA 352 bridge.

Parish President Guy Cormier said, "The Potato Shed Road bridge was inspected on Friday, Dec. 8, and is in need of repairs as noted in our annual bridge inspection report that was done by an independent engineering firm.

"The bridge is passable for vehicular traffic. However there is a posted weight limit of 15 tons for single rear axle and 25 tons for dual rear axle vehicles. The repairs are scheduled to take place in February."

### Beebe

for $62,500.
• Met in executive (secret) session for more the purchase of property near Cecilia High School and to receive



**METAL ROOFING** — **COMPLETE METAL BUILDINGS**

**S&S STEEL BUILDINGS, INC.**
1038 TI-ADAM GUIDRY RD.
ARNAUDVILLE, LOUISIANA 70512
(337) 754-5097 — **FACTORY DIRECT PRICES**

Metal Roofing • Screws • Trim • Purlins
Serving Acadiana Since 1978



# St. Martinville Police Chief suspended

Posted: Aug 07, 2018 10:33 AM CDT
Updated: Aug 07, 2018 10:59 AM CDT

ST. MARTINVILLE, La. - St. Martinville Police Chief Rickey Martin has been suspended.

Councilman Juma Johnson confirms Martin's two day suspension is a disciplinary action.

Martin was appointed chief in December, under the former administration.



St. Martinville Police Chief Ricky Martin

Melinda "Mel" Narcisse Mitchell is now mayor, having defeated incumbent Thomas Nelson in a run-off in April.

This is a developing story; we've reached out to the chief and the mayor for more information.